**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X
                                        :

IN THE MATTER OF THE APPLICATION OF     :
ISABELLA HRANOV                                 :
FOR AN ORDER TO TAKE DISCOVERY      :       Case No. 21-mc-751
PURSUANT TO 28 U.S.C. § 1782            :
                                          :

------------------------------------------------------------- X

### DEUTSCHE BANK AG'S MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO QUASH SUBPOENA UNDER 28 U.S.C. § 1782

Joshua Dorchak
Melissa Y. Boey
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
212.309.6000
joshua.dorchak@morganlewis.com
melissa.boey@morganlewis.com

*Attorneys for Respondent Deutsche Bank AG*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................ 2

    A.    Deutsche Bank ................................................................. 2

    B.    The German Action........................................................... 3

    C.    The Disputed Document .................................................... 4

    D.    The Application ............................................................... 10

LEGAL STANDARD...................................................................................... 12

ARGUMENT ................................................................................................ 13

I.     THIS COURT SHOULD QUASH THE SUBPOENA FOR LACK OF
PERSONAL JURISDICTION............................................................... 13

    A.    Deutsche Bank Is Not Subject to General Jurisdiction in the Southern
District of New York ......................................................... 14

    B.    Deutsche Bank Is Not Subject to Specific Jurisdiction in the Southern
District of New York with Respect to the Application................... 14

II.    THIS COURT SHOULD ALSO QUASH THE SUBPOENA AS A MATTER OF
DISCRETION.................................................................................. 17

    A.    The *Intel* Factors Weigh Against the Application ......................... 17

        1.    Respondent as Party. ...................................................... 17

        2.    Receptivity of Foreign Tribunal ....................................... 18

        3.    Circumvention of Foreign Rules ....................................... 18

        4.    Intrusion and Burden ..................................................... 20

    B.    The Suspicious Status of the Disputed Document Weighs Against the
Application.................................................................... 21

CONCLUSION.............................................................................................. 21

T<small>ABLE OF</small> A<small>UTHORITIES</small>

**Page(s)**

**Cases**

*Al-Ghanim v. IAP Worldwide, Servs., Inc.*,
    Case No. 11-467, 2012 WL 13102517 (M.D. Fla. Jan. 18, 2012) ..........................................19

*Andover Healthcare, Inc. v. 3M Co.*,
    817 F.3d 621 (8th Cir. 2016) ................................................................18

*Application of Gilead Pharmasset LLC,*
    Case No. 14-243, 2015 WL 1903957 (D. Del. Apr. 14, 2015) ..............................................19

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic
    Sol. Int'l to Take Discovery of Chadbourne & Parke LLP,*
    60 F. Supp. 3d 419 (S.D.N.Y. 2014).......................................................20

*Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
    Case No. 17-216, 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) ......................................16, 20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .........................................................................16

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ...................................................... *passim*

*In re Godfrey*,
    526 F. Supp. 2d 417 (S.D.N.Y. 2007).......................................................19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................. *passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,*
    895 F.3d 238 (2d Cir. 2018) ....................................................12, 13, 17, 18, 20

*In re Kreke Immobilien KG*,
    Case No. 13-110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013)................................18, 19, 20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    Case No. 11-2262, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ..........................................14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    Case No. 11-2262, 2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016) ..........................................14

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006).......................................................20

*In re Petrobras Sec. Litig.*,
    393 F. Supp. 3d 376 (S.D.N.Y. 2019)..............................................................13, 16

*In re Sargeant*,
    278 F. Supp. 3d 814 (S.D.N.Y. 2017)....................................................................13

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ................................................................12-13, 17-18

*In re Servotronics, Inc.*,
    Case No. 18-364, 2021 WL 1521931 (D.S.C. Apr. 16, 2021) ...............................20

*Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC*,
    366 F. Supp. 3d 516 (S.D.N.Y. 2018)....................................................................14

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ..................................................................................15

## <u>Statutes</u>

28 U.S.C. § 1782 ............................................................................................... *passim*

Respondent Deutsche Bank AG ("Deutsche Bank" or "DB") respectfully submits this memorandum of law in support of its accompanying motion to quash Applicant Isabella Hranov's subpoena, served on September 29, 2021 (the "Subpoena"), authorized by this Court's Order entered on September 22, 2021 (the "Order") granting in part and denying in part her *ex parte* Application under 28 U.S.C. § 1782 ("Section 1782").

## PRELIMINARY STATEMENT

Deutsche Bank moves to quash the Subpoena as improvidently granted. The linchpin of the Application is a possible forgery (the "Disputed Document") that Applicant sought to introduce in the foreign litigation (the "German Action") last year after obtaining it "from an unknown third party." The German Action concerns transactions in Switzerland in 2006-2009. The Disputed Document is a "printout" of a modified version of a March 2008 email from a Deutsche Bank employee in Switzerland to a Deutsche Bank employee in England (the "DB Document"). Deutsche Bank produced the DB Document in the German Action, after searching all relevant electronic archives for the Disputed Document (the "Investigation"). The DB Document **was**, and the Disputed Document was **not**, found in DB's electronic archives. Deutsche Bank's Global Head of eDiscovery Services, who happens to work in New York – unlike her predecessor, who worked in Frankfurt – submitted a witness statement in the German Action describing the Investigation process and results. The Investigation in 2020, a defensive reaction to the Disputed Document, cannot serve as a basis to award Applicant worldwide discovery of Deutsche Bank's records from 2006 to 2009, as a matter of law and as a matter of fairness.

It goes without saying that an applicant should not be able to use a forged document as the key to open the door to Section 1782 discovery. At a minimum, this Court should defer any potential Section 1782 discovery unless and until the German court rules that the Disputed

Document is authentic.  But even if the Disputed Document were found to be authentic, it would remain an illegitimate basis for Section 1782 discovery.  The Investigation lacks the "causal relationship" that the Second Circuit requires between an entity's in-forum contacts and the foreign proceeding for specific personal jurisdiction to attach.  The Investigation in 2020 cannot have "[given] rise to the episode-in-suit" that occurred in 2006-2008.  There is no dispute that this Court lacks general personal jurisdiction over Deutsche Bank.  Accordingly, the Subpoena should be quashed for lack of personal jurisdiction.

Even if this Court should somehow find that it has specific jurisdiction over Deutsche Bank, the Subpoena should be quashed as a matter of discretion.  The *Intel* factors weigh against Applicant, mainly because Applicant is admittedly forum shopping while her requests that Deutsche Bank produce many of the same documents are pending in the German Action.  In any event, the document requests in the Application are overbroad and unduly burdensome; they have nothing to do with the Investigation and nothing to do with New York.  And apart from the *Intel* factors, this Court should not throw open Deutsche Bank's global email, personnel, and securities trading archives to Applicant as a reward for creating a dispute over a document whose source Applicant refuses to identify and whose authenticity is highly suspect.

## <u>BACKGROUND</u>

### A.    **Deutsche Bank**

Deutsche Bank is a German corporation with its headquarters in Germany and its principal place of business in Germany.  *See Declaration of Dr. Jörg Mucke in Support of Deutsche Bank's Motion to Quash Subpoena Under 28 U.S.C. § 1782* (filed simultaneously herewith, the "<u>Mucke Declaration</u>") ¶ 3.  Although Deutsche Bank operates in dozens of countries worldwide, including the U.S.A., its operations are centered in Germany.  *Id.*

Deutsche Bank's Global Head of eDiscovery Services does not need to work in any specific location in order to fulfill his or her duties. *Id.* ¶ 4. Deutsche Bank's first officer in that role, Susanne Mueller, worked in Frankfurt during her tenure; the second was Margaret Dolson, who works in New York, from 2017 to the present. *Id.*

Deutsche Bank's Global Head of Equities Trading does not need to work in any specific location in order to fulfill his or her duties. *Id.* ¶ 5. As of the date of the Disputed Document, Deutsche Bank's Global Head of Equities Trading was Noreddine Sebti, who worked in New York, but moved about a month later (May 1, 2008) to Hong Kong, where he continued in his role as Global Head of Equities Trading. *Id.*

### B.     The German Action

On or about October 31, 2016, Applicant, a resident of Switzerland, sued Deutsche Bank AG, a German bank based in Frankfurt, and Simon Biner, a resident of Switzerland who worked for DB from 2006 through 2010 in Zurich, commencing the German Action in the Frankfurt am Main District Court (the "German Court"). *See Declaration of Dr. Christian Schmitt in Support of Deutsche Bank's Motion to Quash Subpoena Under 28 U.S.C. § 1782* (filed simultaneously herewith, the "Schmitt Declaration") ¶ 3. *See also Declaration of Konrad Kern In Support Of Application Under 28 U.S.C. § 1782* [Docket No. 2] (the "Kern Declaration"), Ex. 2 (German Complaint translated into English) (the "Complaint"). The essential claim is that the Defendants breached their fiduciary duties to their client Rumen Hranov, Applicant's husband, by convincing him to purchase certain options on the stock of a Swiss company called OC Oerlikon that traded on the Swiss Stock Exchange, and then manipulating the price of that stock to render many of those options worthless, allegedly causing net losses of over €326.8 million. Schmitt Decl. ¶ 4.

Mr. Hranov assigned his claims to Applicant, presumably to evade a German Court rule that prohibits a plaintiff from testifying as a witness.  *Id.* ¶ 5; *see* Complaint at 13.

All of Mr. Biner's communications with Mr. Hranov took place in Switzerland.  Schmitt Decl. ¶ 6; *see* Complaint at 76.  Mr. Biner emailed with Deutsche Bank colleagues in Switzerland and England, occasionally copying colleagues elsewhere, concerning Mr. Hranov.  *Id.*  Applicant does not allege that Deutsche Bank or Mr. Biner purposefully availed themselves of the laws of New York at any point during the timeframe covered by the Complaint.  *See generally Memorandum of Law in Support of Application for Issuance of Subpoena Pursuant to 28 U.S.C. § 1782* [Docket No. 4] (the "Application Brief").  Indeed, neither New York nor the U.S. is mentioned in the Complaint.  *See generally* Complaint.[1]

### C.    The Disputed Document

In January 2020, initially out of court, Applicant presented the Disputed Document to Defendants, as supposed proof of Mr. Biner's intent to breach his duties to Mr. Hranov.  Schmitt Decl. ¶ 7.  The Disputed Document is a variation of the DB Document.  As Applicant informed this Court, it was "obtained from an unknown third party."  Application Br. at 4.  Applicant would not disclose who gave her the Disputed Document or where that person found it.  *Id.* ¶ 8.

The Disputed Document, reproduced word for word here, reads:

| **Simon Biner/db/dbcom@DBEMEA** | | |
|---|---|---|
| | To | Richard Carson/DEGEQ/DMG UK/DeuBa@DBEMEA |
| 28/03/2008 12:01 | cc | Garth Richie/DBGEQ/DMG UK/DeuBa@DBEMEA, luigi.vignola@db.com, nino.kjellman@db.com, Noreddine Sebti/NewYork/DBNA/DeuBa@DBAmericas |
| | Subject | Re: OERLIKON  ****pls read **** |

we sell warrants only over the market with our normal market making activity.
the volume we sell is always small and short term

---

[1] The Complaint incidentally refers to "American" stock options, as distinguished from "European" stock options, the latter being the type that Mr. Hranov purchased.  Complaint at 21, 39, 67.

the two big players VICTORY and HRANOV are not active at all at the moment.

**value portfolio VICTORY approx . 18 mio CHF at 350, at 450 it would be 70 mio CHF and would have a delta of 750 / shares**

**value portfolio HRANOV approx . - 13 mio CHF at 350 (he is short puts), at 450 it would be + 24 mio CHF and would  have a delta of 500 / shares**

on the upside, delta will be generated with this 2 portfolios. at a certain level they would roll or sell it back to us.

loss out of **APRIL is a total of 93 mio CHF** for this two clients. I would say in a bullish environment they would prefer to sell it back because a delta neutral roll over would cost to much money.

as soon as this 2 clients see that we are under pressure they will be hard with us as well. (remember last autumn)

on a verbal basis HRANOV tells me that he would be willing to sell if his portfolio gets a value. at what level is difficult to say.  no matter what, we can adjust the pricing in our favour. client is not aware at all.

DWS I will meet in the afternoon as paul is in this building and out for lunch

call you in 1 hour

regrds


Simon Biner
Managing Director
Head of GME Switzerland

Schmitt Decl. ¶ 9, Ex. 1 (bold text in original).

After the Disputed Document failed to convince Deutsche Bank to settle, on April 6, 2020, Applicant introduced the Disputed Document into the record of the German Action.  *Id.*  In response, Deutsche Bank's Regional Head of Litigation Germany initiated and coordinated the Investigation – a thorough search for Mr. Biner's emails in all of Deutsche Bank's potentially relevant electronic email archives worldwide (collectively, the "Email Archives").  *Id.* ¶ 11; Mucke Decl. ¶ 9.  Most of the searching of the Email Archives was performed by eDiscovery personnel outside the US, but the Investigation as a whole was overseen by the Global Head of eDiscovery

Services, Margaret Dolson.  Mucke Decl. ¶ 10.  Ms. Dolson happens to work in New York.  *Id.* ¶ 4.  Her predecessor as Global Head of eDiscovery Services until 2017, Susanne Mueller, worked in Frankfurt.  *Id.*  Therefore, if Applicant had introduced the Disputed Document shortly after commencing the German Action in 2016, the Investigation would have been overseen by a resident of Germany.  *Id.* ¶ 11.

On July 13, 2020, Deutsche Bank submitted to the German Court a detailed witness statement from Ms. Dolson on the process and the results of the Investigation.  Schmitt Decl. ¶ 13. *See* Kern Decl., Ex. 3 (Witness Statement).  In the Investigation, Deutsche Bank confirmed that (i) Mr. Biner's emails in 2008 were stored in the Email Archives (in the UK); (ii) the DB Document was in the Email Archives, in several identical copies; and (iii) the Disputed Document was not in the Email Archives.  *Id.* ¶¶ 14, 15.  The DB Document, located in electronic form (.pst file), is from Mr. Biner (in Zurich) to his colleague Richard Carson (in London) dated March 28, 2008 (the "<u>DB Document</u>").  *Id.* ¶ 16.

The DB Document, reproduced word for word here, reads (redlined against Disputed Document):

**Simon Biner/db/dbcom@DBEMEA**

|  |  |  |
|---|---|---|
| | To | Richard Carson/DEGEQ/DMG UK/DeuBa@DBEMEA |
| 28/03/2008 12:01 | cc | Garth Richie/DBGEQ/DMG UK/DeuBa@DBEMEA, luigi.vignola@db.com, nino.kjellman@db.com, Noreddine Sebti/NewYork/DBNA/DeuBa@DBAmericas |
| | Subject | Re: OERLIKON  ****pls read **** |

we sell warrants only over the market with our normal market making activity.
the volume we sell is always small and short term

the two big players VICTORY and HRANOV are not active at all at the moment.

**value portfolio VICTORY approx . 18 mio CHF at 350, at 450 it would be 70 mio CHF and would have a delta of 750 / shares**

**value portfolio HRANOV approx . - 13 mio CHF at 350 (he is short puts), at 450 it would be + 24 mio CHF and would  have a delta of 500 / shares**

on the upside, delta will be generated with this 2 portfolios. at a certain level they would roll or sell it back

to us.

loss out of **APRIL is a total of 93 mio CHF** for this two clients. I would say in a bullish environment they would prefer to sell it back because a delta neutral roll over would cost to much money.

as soon as this 2 clients see that we are under pressure they will be hard with us as well. (remember last autumn)

on a verbal basis HRANOV tells me that he would be willing to sell if his portfolio gets a value. at what level is difficult to say. ~~no matter what, we can adjust the pricing in our favour. client is not aware at all.~~

DWS I will meet in the afternoon as paul is in this building and out for lunch

call you in 1 hour

regrds


Simon Biner
Managing Director
Head of GME Switzerland

<+41 44 227 33 40
+41 79 833 21 42>

*Id.* ¶ 16, Ex. 2 (bold text in original).

On October 29 and December 3, 2020, Applicant filed responses in the German Court, asserting that the DB Document is a forgery and the Disputed Document is authentic. *Id.* ¶ 17. As proof, Applicant did not disclose where she obtained the Disputed Document. *Id.* ¶ 18. Instead, she submitted a report and supplement from a detective agency based in Gav-Yavne, Israel called "International Intelligence Agency" that attached a blurry and oddly angled "Picture[]" of an email allegedly discovered on the "Dark Web" (the "Dark Web Document") that purportedly confirms the validity of the Disputed Document. *Id.* ¶ 17, Ex. 3.

The Dark Web Document, reproduced word for word here (redlined against the Disputed Document) reads:

**Simon Biner/db/dbcom@DBEMEA**

28/03/2008 12:01

**To:**  Richard Carson/DEGEQ/DMG UK/DeuBa@DBEMEA
**cc:**  Garth Richie/DBGEQ/DMG UK/DeuBa@DBEMEA,
luigi.vingola@db.com, nino.kjellman@db.com,
Noreddine Sebti/NewYork/DBNA/DeuBa@DBAmericas
**Subject <Re>:** <->OERLIKON <->***< >pls read <->***

we sell warrants only over the market with our normal market making activity.
the volume we sell is always small and short term

the two big players VICTORY and HRANOV are not active at all at the moment.

**value portfolio VICTORY approx . 18 mio CHF at 350, at 450 it would be 70 mio CHF and would have a delta of 750 / shares**

**value portfolio HRANOV approx . - 13 mio CHF at 350 (he is short puts), at 450 it would be + 24 mio CHF and would <->have a delta of 500 / shares**

on the upside, delta will be generated with this 2 portfolios. at a certain level they would roll or sell it back to us.

loss out of <APRIL is a total of 93 mio CHF> for this two clients. I would say in a bullish environment they would prefer to sell it back because a delta neutral roll over would cost to much money.

as soon as this 2 clients see that we are under pressure they will be hard with us as well. (remember last autumn)

on a verbal basis HRANOV tells me that he would be willing to sell if his portfolio gets a value. at what level is difficult to say.  no matter what, we can adjust the pricing in our favour. client is not aware at all.

DWS I will meet in the afternoon as paul is in this building and out for lunch

call you in 1 hour

**regards**
< >
< >
< >
Simon Biner
Managing Director
Head of GME Switzerland
<+41 44 227 33 40>
<+41 79 83 21 42>

*Id.*, Ex. 3 (bold text in original).[2]

---

[2] Discrepancies against the Disputed Document:  (1) "Re" has been bolded and moved adjacent to "Subject" before the colon; (2-3) two asterisks missing in Subject line; (4) space added in Subject line; (5) gratuitous space missing in fourth paragraph; (6) bolding missing in sixth paragraph; (7) "regards" bolded; (8) "regrds" spelling corrected; (9) three lines missing between closing and signature block; (10-11) two phone numbers missing from signature block.

Applicant never explained how it is that her experts, deeply familiar with the Dark Web, could **not** find the Disputed Document there, but **did** find the Dark Web Document – with eleven discrepancies against the Disputed Document.  *Id.* ¶ 18.

On February 26, 2021, Deutsche Bank filed in the German Action a report from Deloitte GmbH.  *Id.* ¶ 19, Ex. 4 (Deloitte Report).   DB had engaged Deloitte as a consultant, and at Deloitte's suggestion DB repeated the Investigation with an expanded scope.  *Id.*  Deloitte confirmed the results of the Investigation.  *Id.* ¶ 20.  Deloitte concluded that there is no reason to question the authenticity of the several copies of the DB Document in the Email Archives.  *Id.* Deloitte also concluded that:  if the Disputed Document were authentic, it would be in Deutsche Bank's electronic archives; the Disputed Document is not in Deutsche Bank's electronic archives; ergo, the Disputed Document is not authentic.  *Id.*

In summary, the essential characteristics of the two documents are as follows:

|  | DB Document | Disputed Document |
|---|---|---|
| Provided by: | DB (custodian, Simon Biner) | "unknown third party" |
| Source: | DB electronic email archives | unknown |
| Format: | electronic .pst email file | "printout" of email |
|  |  |  |
| Authenticated by: | Deloitte | Int'l Intelligence Agency |
| Source: | DB electronic email archives | "Dark Web" |
| Format: | electronic .pst email file | "Picture[]" |
| Discrepancies?: | No | Yes (eleven) |

*See id.*, Exs. 1-3.  The German Court is aware of, and has the authority to decide, the dispute over the Disputed Document, although no hearing has been scheduled at this time.  *Id.* ¶ 21.

Deutsche Bank does not ask this Court to decide which of these documents is authentic. Deutsche Bank merely asks this Court to observe that there are serious questions about the authenticity of the Disputed Document.

### D.    The Application

The Investigation, triggered **only** by Applicant's submission of the Disputed Document, is the **only** activity in New York that Applicant alleges "ties DB in New York to the litigation in Germany" and thus justifies the Application.  Application Br. at 9.

The German Court's rules generally prohibit broad, category-based discovery demands. *Id*.    With the admitted purpose of evading the rules of the forum that she chose (*id.* at 5-6), Applicant applied *ex parte* to this Court under 28 U.S.C. § 1782 for a subpoena, citing the Investigation in 2020 as the nexus between New York and the German Action (*id.* at 4-5, 9-10), and seeking several broad categories of documents and a deposition from DB that have nothing to do with the Investigation or New York (*id.* at 6-7).  This Court granted the application in part, approving a subpoena based on "preliminar[]y find[ing]s."  *See Order* [Docket No. 8] at 1.

Applicant failed to inform this Court that most of the subpoenaed documents have also been requested in the German Action.  Schmitt Decl. ¶¶ 22-23, Ex. 5.  Deutsche Bank has already produced some of these documents relating to Mr. Biner's emails and phone calls with Mr. Hranov, and Applicant's requests to the German Court are pending for further documents concerning such communications and Deutsche Bank's trading in OC Oerlikon stock and warrants.  *Id.* ¶ 24.  All of the documents sought in Applicant's Subpoena are accessible to Deutsche Bank in Germany, in each case subject to applicable local laws and regulations.  Mucke Decl. ¶ 6.  In other words, the German Court can be expected either to moot the Subpoena in substantial part (by granting Applicant's requests) or to express its disapproval of Applicant's requests.  *See* Schmitt Decl. ¶ 27.  Instead of informing this Court about the parallel discovery pending in the German Action, Applicant asserts that "[n]o such procedures exist" for "providing discovery" and "there is no discovery" in the German Action.  Application Br. at 5.  That is, at best, an exaggeration.  Schmitt

Decl. ¶ 22 (citing German Code of Civil Procedure).   Applicant has also failed to inform the German Court about the Application.  *Id.* ¶ 28.

Applicant makes the misleading assertion that the Disputed Document is "an email from Biner to Norredine Sebti, who was DB's Global Head of Equity Trading and was located in New York."  Application Br. at 4.  Schmitt Decl., Ex. 1.  The Disputed Document is an email from Mr. Biner in Switzerland to Richard Carson in London.  Schmitt Decl., Ex. 1.  Along with three Deutsche Bank colleagues based in London, Mr. Sebti was **copied**, but is not addressed in the message.  *Id.*  Mr. Sebti was then working in New York, but he moved to Hong Kong one month and three days later, where he continued in that role.  Mucke Decl. ¶ 5.

Applicant also incorrectly argues that "[c]learly DB was directing its activities to this district," because "part of" the Investigation was "accessing DB's 'Digital Safe' located in New York."  Application Br. at 10.  **There is no DB Digital Safe in New York.**  Mucke Decl. ¶ 7.  In any event, Deutsche Bank searched **all** of its Digital Safes worldwide (US, UK/Germany, Singapore), one of which happened to be in the US – but it is not in New York, and it is **not** the one where Mr. Biner's emails were archived – those are in the UK, as Applicant is well aware. Kern Decl., Ex. 3 (Witness Statement), at Appendix A; Application Br. at 5.  There were two documents discovered in the US Digital Safe, because Mr. Sebti was copied on the DB Document, which appears in two email chains.   Kern Decl., Ex. 3 (Witness Statement), at Appendix A.  In sum, the Investigation in 2020 was incidentally connected to New York, but besides some ccs to DB's Global Head of Equities Trading, who could have worked anywhere and in fact moved to Hong Kong a month later, Applicant provides no evidence of any connection between New York and Mr. Biner's alleged improper conduct in 2006-2009.  *See generally* Complaint; Application.

Applicant professes to make the Application because she contests the Investigation, including the "security, reliability, and integrity of DB's email storage and retrieval."  Application Br. at 4, 6.  But the subpoenaed documents – **other** emails, Deutsche Bank's trading files in Swiss stocks, Mr. Biner's personnel file – will shed no light whatsoever on the authenticity of the Disputed Document or, for that matter, the competence of Ms. Dolson or Deloitte.  **The documents demanded in the Subpoena are archived in Europe.**  Mucke Decl. ¶ 6.  **Deutsche Bank is not aware of any representative in New York with first-hand knowledge about any of the Topics on which the Subpoena seeks deposition testimony.**  *Id.* ¶ 8.  The Applicant is trying to use DB's entirely defensive reaction to her Disputed Document as a wedge to open the door to worldwide discovery about DB's activities in Europe over ten years ago.

## LEGAL STANDARD

An applicant for Section 1782 discovery must meet three initial requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *E.g., Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018). The second and third requirements are not contested here.  The first requirement equates to personal jurisdiction over the respondent.  *E.g., In re del Valle Ruiz*, 939 F.3d 520, 527-31 (2d Cir. 2019).  Absent general jurisdiction over the respondent, the petitioner must show specific jurisdiction, namely that "the discovery material sought proximately resulted from the respondent's forum contacts."  *Id.* at 530.

If the three initial requirements are met, the court must then exercise its discretion in deciding whether to grant or deny the application.  *E.g., Schmitz v. Bernstein Liebhard & Lifshitz,*

*LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004).  "This discretion, however, is not boundless." *Id.* at 84.

The Supreme Court has identified four factors that district courts must consider:

> (1)    whether the person from whom discovery is sought is a participant in the foreign proceeding, in which event the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad;

> (2)    the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

> (3)    whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and

> (4)    whether the request is unduly intrusive or burdensome.

*Kiobel*, 895 F.3d at 244 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)).  "The *Intel* factors are not to be applied mechanically," however, and "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id.* at 245.

## **ARGUMENT**

### **I.     This Court Should Quash the Subpoena for Lack of Personal Jurisdiction.**

This Court cannot grant Section 1782 discovery without having personal jurisdiction over the respondent, consistent with due process.  *See, e.g.*, *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382 (S.D.N.Y. 2019) ("This Court therefore concludes that it should apply a personal jurisdiction analysis to determine whether [respondent] is 'found' in the district for the purposes of the § 1782 motion."); *In re Sargeant*, 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017) ("[C]ompelling an entity to provide discovery under § 1782 must comport with constitutional due process."); *del Valle Ruiz*, 939 F.3d at 528 ("§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process").  Because this Court has neither general nor

specific jurisdiction over Deutsche Bank with respect to the Application, the Order should be modified and the Subpoena should be quashed.

### A.   Deutsche Bank Is Not Subject to General Jurisdiction in the Southern District of New York.

Applicant does not assert that this Court has general jurisdiction over Deutsche Bank, with good reason.  This Court has held on several occasions, citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014), that it lacks general jurisdiction over Deutsche Bank.  *See, e.g., Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 560-61 (S.D.N.Y. 2018) ("Plaintiffs concede that [DB is] not 'at home' in New York such that [it] would be subject to general jurisdiction" and holding that DB "did not consent to general jurisdiction by virtue of registering under the New York Banking Law"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Case No. 11-2262, 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016) (holding that DB did not consent to general jurisdiction by registering with New York banking regulators); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Case No. 11-2262, 2015 WL 6243526, at *27 (S.D.N.Y. Oct. 20, 2015) (concluding that "general personal jurisdiction was . . . inappropriate" over DB).

### B.   Deutsche Bank Is Not Subject to Specific Jurisdiction in the Southern District of New York with Respect to the Application.

The standard for specific jurisdiction over a prospective Section 1782 respondent is well established:  "[T]he respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all."  *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019).  The Application fails to meet this standard.

In the Subpoena, Applicant seeks several categories of Deutsche Bank documents – related to Mr. Biner, Mr. Hranov, OC Oerlikon stock, and trading strategies during 2006-2008.  Applicant alleges that Deutsche Bank purposefully availed itself of New York because its Global Head of eDiscovery Services, located in New York, oversaw the process whereby Deutsche Bank searched

its electronic email archives, in which some of the subpoenaed documents are preserved, during
2020. **So the question before this Court is this:  Is the Investigation the primary or proximate
reason why the subpoenaed documents are available at all?**  *See del Valle Ruiz*, **939 F.3d at
530.  The answer, obviously, is No.**  The subpoenaed documents have been just as available since
2006-2008 as they are today.  Documents created in 2006-2008 cannot exist because of a search
for them conducted in 2020.  The flaw in the Application is that simple and that fatal.  *See id.* at
531 ("The district court concluded that Santander's related forum contacts all postdated the
acquisition of BPE and could therefore not be even but-for 'causes' of the availability of the
evidence sought in discovery.  With one exception, we agree.")

The Second Circuit has "always required some *causal* relationship between an entity's in-
forum contacts and the proceeding at issue."  *See id.* at 530 (emphasis in original).  And where, as
here, the respondent is a party potentially liable in the foreign proceeding, "[t]he exercise of
specific jurisdiction depends on in-state activity that *gave rise to the episode-in-suit*."  *Waldman
v. Palestine Liberation Org.,* 835 F.3d 317, 331 (2d Cir. 2016) (emphasis in original) (quoted in
*del Valle Ruiz*, 919 F.3d at 530).  The Investigation plainly did not give rise to the German Action.

Nor was the Investigation a purposeful availment of New York in the first place.  As noted
above, the Investigation was worldwide; the **US Digital Safe is not in New York**, it was only one
of several electronic archives that were searched, and Deutsche Bank personnel need not be in the
US to access the US Digital Safe (subject to applicable foreign privacy/confidentiality regulations).
Mucke Decl. ¶ 7.  The Investigation was initiated and coordinated by DB's Regional Head of
Litigation Germany in Frankfurt, and was overseen by DB's Global Head of eDiscovery Services,
Ms. Dolson, who worked in New York, but she was not required to work in New York in order to
serve in that capacity.  Mucke Decl. ¶¶ 1, 4, 9-10.  In fact, Ms. Dolson's predecessor in that

capacity until 2017, Ms. Mueller, worked in Frankfurt. *Id.* ¶ 4.  **If Applicant had introduced the Disputed Document shortly after commencing the German Action, the author of the witness statement would have been Ms. Mueller, and there would have been no activity in New York whatsoever on which Applicant could purport to base a Section 1782 application.** *See id.* ¶ 11.  This proves that the Investigation was not **purposefully** directed at New York.

Applicant asserts that the subpoenaed documents are relevant to the German Action, but that is not enough.  Applicant does not allege that Deutsche Bank or Mr. Biner purposefully availed themselves of a New York forum when creating the subpoenaed documents.  The subject negotiations and transactions and stock trading all took place in Switzerland.  Schmitt Decl. ¶¶ 4, 6. Mr. Biner copied Mr. Sebti on certain emails with colleagues in London, but there is no indication that Mr. Biner had any "purposeful" interest in Mr. Sebti's geographic location.  *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts").  In any event, Mr. Biner ccing Mr. Sebti in New York plainly did not "give rise to" the German Action.  *See del Valle Ruiz,* 939 F.3d at 529.   Neither Mr. Sebti nor New York is even mentioned in Applicant's Complaint.

Simply stated, there is no **purposeful** availment of New York or **causal** connection between New York activity and the German Action.  Thus, the Subpoena should be quashed for lack of personal jurisdiction.  *See id.* at 530; *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 383 (S.D.N.Y. 2019) (denying petition for lack of specific jurisdiction where the petitioner failed to show that Petrobras "purposefully direct[ed] [its] activities … at the forum"); *Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd*., Case No. 17-216, 2017 WL 3841874, at *5

(S.D.N.Y. Sept. 1, 2017) (quashing subpoena because "[t]here is no nexus between [respondent's] New York contacts and the subject matter of the discovery sought by [applicant]").

## II.      This Court Should Also Quash the Subpoena as a Matter of Discretion.

Even if this Court were to find a causal connection between Deutsche Bank's recent investigation of its electronic email archives and Applicant's allegations of conduct twelve years earlier, this Court should quash the Subpoena in its discretion, both under the *Intel* discretionary factors and also in light of the unique and material risk here that the Subpoena might inadvertently reward misconduct.

### A.      The *Intel* Factors Weigh Against the Application.

Applicant admits that the Application is a fishing expedition:  she "does not know what DB has."  Application Br. at 15.  Applicant also admits that she is forum-shopping here because the German court prohibits fishing expeditions:  "the German Court does not have the power to order DB to produce categories of documents."  *Id.*  The documents sought by Applicant do not relate to the (in)authenticity of the Disputed Document, which was Applicant's ticket to get into this forum.  *See id.* at 6-7.  The documents sought are not even located in this jurisdiction:  DB has no digital archives in New York; these documents are generally archived in Europe, the site of the German Action and every material relevant event.  Mucke Decl. ¶ 6.  The Application runs decidedly contrary to the factors established by the Supreme Court and the Second Circuit for Section 1782 discovery.

1.      <u>Respondent as Party</u>.  The first factor that this Court should consider is "whether the person from whom discovery is sought is a participant in the foreign proceeding." *Kiobel*, 895 F.3d at 244.  If the respondent is a party, the first factor favors denying the application because the "need for § 1782 help is not as apparent as it ordinarily is when evidence is sought from a

nonparticipant in the matter arising abroad." *Schmitz*, 376 F.3d at 85; *see also Kiobel*, 895 F.3d at 245.  Deutsche Bank is a party to the German Action.  This factor weighs against the Application.

The "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence" when appropriate.  *Intel*, 542 U.S. at 264; *see also Schmitz*, 376 F.3d at 85.  Applicant attempts to turn this factor upside down by arguing that she cannot request the subpoenaed documents in the German Action.  Application Br. at 14-15.  Applicant fails to inform this Court, however, that she asked the German Court to compel Deutsche Bank to produce some of the subpoenaed documents in the German Action and that the German Court has yet to rule.  Schmitt Decl. ¶¶ 23-27.  *See Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623-4 (8th Cir. 2016) (affirming denial of Section 1782 application based in part on applicant's ability to request documents in German proceedings).

2. <u>Receptivity of Foreign Tribunal</u>.  The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  Typically, when this Court "has no evidence suggesting opposition from the foreign tribunal," that absence "should count as neutral or slightly favoring the petition."  *See In re Kreke Immobilien KG*, Case No. 13-110, 2013 WL 5966916, *5 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds, del Valle Ruiz*, 939 F.3d 520.  Here, however, Applicant never informed the German Court about the Application.  Schmitt Decl. ¶ 28.  Applicant should not obtain a favorable presumption as a result.  *Cf. Kreke*, 2013 WL 5966916, at *5.

3. <u>Circumvention of Foreign Rules</u>.  The third *Intel* factor counsels a district court to deny a Section 1782 petition if it is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."  *Kiobel*, 895 F.3d at 244 (quoting *Intel,* 542 U.S. at 264-5).

Here, Applicant admits she is attempting to obtain in this Court what she cannot obtain (so she says) in the court in which she chose to file suit. *See* Application Br. at 17. Actually, it was Applicant's assignor, Mr. Hranov, who chose the German Court, by signing a contract with Deutsche Bank that included a forum selection clause. *See* Kern Declaration ¶ 3. Because Mr. Hranov expressly agreed to that the German Court, "with all its requisite procedural rules," the Application seeks to "evade foreign proof-gathering restrictions" to which he willingly agreed and Applicant willingly succeeded. *See Kreke*, 2013 WL 5966916, at *7. This factor weighs heavily against the Application. *See id.; Al-Ghanim v. IAP Worldwide, Servs., Inc.,* Case No. 11-467, 2012 WL 13102517, at *10 (M.D. Fla. Jan. 18, 2012) (forum selection clause "weighs against providing assistance to Plaintiff").[3]

There is case law consistent with Applicant's argument, that evading foreign courts' rules is a virtue, to be rewarded by the U.S. District Courts. But that cannot be what the Supreme Court intended. "It would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority." *Kreke*, 2013 WL 5966916, at *6. *See In re Godfrey*, 526 F. Supp. 2d 417, 424 (S.D.N.Y. 2007) ("[T]his would not be a case for exercising discretion to provide the requested assistance, because the connection to the United States is slight at best and the likelihood of interfering with Dutch discovery policy is substantial."), *abrogated on other grounds by del Valle Ruiz*, 939 F.3d 520; *Application of Gilead Pharmasset LLC,* Case No. 14-243, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) ("a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting

---

[3] As noted above, Mr. Hranov's assignment of his claims to his wife, the Applicant, was itself apparently an effort to "evade foreign proof-gathering restrictions" of the forum to which he agreed. *See* Complaint at 13; *Kreke,* 2013 WL 5966916, at *7. The German Court prohibits a plaintiff from giving testimony as a witness, and Mr. Hranov is the primary witness in the Complaint. Schmitt Decl. ¶ 5; Complaint, *passim.*

immediately to § 1782 can be a factor in a court's analysis"); *In re Microsoft Corp.,* 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006), *abrogated on other grounds by del Valle Ruiz*, 939 F.3d 520 (the "enforcement of Microsoft's subpoenas" contrary to foreign tribunal's decision "would constitute a clear circumvention of the [foreign tribunal's] procedures which the Supreme Court expressly prohibited in *Intel*.").

4.   Intrusion and Burden.  The final discretionary factor that this Court must consider is whether the Supplemental Petition is "unduly intrusive or burdensome." *Kiobel*, 895 F.3d at 244 (quoting *Intel,* 542 U.S. at 264-5).  This factor also weighs against the Application.

The Application is blatantly overbroad on a legal level.  Not one category of subpoenaed documents concerns any type of activity in New York.  *See Austl. & N.Z. Banking Grp*., 2017 WL 3841874, at *5 (quashing subpoena because "[t]here is no nexus between [respondent's] New York contacts and the subject matter of the discovery sought by [applicant]"); *cf. In re Servotronics, Inc.,* Case No. 18-364, 2021 WL 1521931, at *4 (D.S.C. Apr. 16, 2021) (granting application where "discovery material sought here … resulted from [respondent's] contacts with South Carolina").

The Application is blatantly overbroad on a practical level as well.  The Subpoena would basically require Deutsche Bank to retrieve and review every document in its electronic archives that mentions Mr. Biner or OC Oerlikon stock over the last fifteen years.  *See* Subpoena at 6; *see also In re Application Pursuant to 28 U.S.C. § 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP,* 60 F. Supp. 3d 419, 432 (S.D.N.Y. 2014) (denying 1782 application solely based on finding that production would be unjustified burden); *Kreke*, 2013 WL 5966916, at *7 (restricting subpoena to "only those documents relating to a particular event").

**B.     The Suspicious Status of the Disputed Document Weighs Against the Application.**

Independent of the *Intel* factors, Applicant should not obtain assistance from this Court unless the German Court rules that the Disputed Document – the linchpin of the Application – is authentic.  Deutsche Bank is not asking this Court to decide that dispute.  DB does submit, however, that:  (i) the Applicant's simple statement that "forensic experts authenticated" the Disputed Document (Application Br. at 5) is misleading; and (ii) the Disputed Document – a "printout" provided by an "unknown third party" and "authenticated" (*id.* at 4-5) by a "Picture[]" from the "Dark Web" (Schmitt Decl., Ex. 3) that does not even match – is materially suspicious.

This Court should not approve a Section 1782 application founded on a materially suspicious document.  The Subpoena should be quashed.

## <u>CONCLUSION</u>

For the foregoing reasons, Deutsche Bank respectfully requests that the Court enter an order quashing the Subpoena as improvidently authorized, finding that this Court lacks personal jurisdiction over Deutsche Bank in this matter, or, in the alternative, in this Court's discretion.

Dated:  October 29, 2021                     **MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Joshua Dorchak*
　　　　Joshua Dorchak
　　　　Melissa Y. Boey
　　　　101 Park Avenue
　　　　New York, New York 10178
　　　　212.309.6000
　　　　joshua.dorchak@morganlewis.com
　　　　melissa.boey@morganlewis.com

*Attorneys for Respondent Deutsche Bank AG*