UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :

IN THE MATTER OF THE APPLICATION OF  :
ISABELLA HRANOV  :
FOR AN ORDER TO TAKE DISCOVERY  :   Case No. 21-mc-751
PURSUANT TO 28 U.S.C. § 1782  :
                                                              :
------------------------------------------------------------- X

**DECLARATION OF DR. CHRISTIAN SCHMITT IN SUPPORT OF
DEUTSCHE BANK'S MOTION TO QUASH SUBPOENA UNDER 28 U.S.C. § 1782**

      I, the undersigned DR. CHRISTIAN SCHMITT, declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

      1.     I am a partner of the law firm Linklaters LLP in Frankfurt am Main, Germany. I am a licensed Rechtsanwalt (attorney) in Germany. I represent Deutsche Bank AG ("Deutsche Bank" or "DB") in a lawsuit (the "German Action") filed by plaintiff, Isabella Hranov ("Applicant"), against them in the Frankfurt am Main Regional Court (the "German Court").

      2.     I make this declaration based upon my personal knowledge, participation in the German Action, and consultation with Deutsche Bank and review of documents provided by its representatives. I make this declaration in support of Deutsche Bank's accompanying *Motion to Quash Subpoena Under 28 U.S.C. § 1782*.

      3.     On or about October 31, 2016, Applicant, a resident of Switzerland, sued Deutsche Bank AG, a German bank based in Frankfurt, and Simon Biner, a resident of Switzerland who worked for DB from 2006-2010 in Zurich, commencing the German Action in the Frankfurt am Main District Court (the "German Court").

      4.     The essential claim is that the Defendants breached their fiduciary duties to their client Rumen Hranov, Applicant's husband, by convincing him to purchase certain options on the

stock of a Swiss company called OC Oerlikon that traded on the Swiss Stock Exchange, and then manipulating the price of that stock to render many of those options worthless, allegedly causing net losses of over €326.8 million.

5. As recited in the Complaint (at 21, 39, 67), Applicant holds her alleged claims against Defendants by assignment from her husband. Given that Mr. Hranov features as Applicant's witness in the Complaint (*passim*), I presume that Mr. Hranov assigned his claims to his wife in order to evade a German Court rule that prohibits a plaintiff from testifying as a witness.

6. To the best of my knowledge after consultation with Deutsche Bank: (i) all of Mr. Biner's communications with Mr. Hranov took place in Switzerland; and (ii) Mr. Biner emailed with Deutsche Bank colleagues in Switzerland and England, occasionally copying colleagues elsewhere, concerning Mr. Hranov.

7. In January 2020, initially out of court, Applicant presented a certain document (the "Disputed Document") to Defendants and their counsel, as supposed proof of Mr. Biner's intent to breach his duties to Mr. Hranov.

8. Applicant would not disclose who gave her the Disputed Document or where that person obtained it.

9. After the Disputed Document failed to convince Deutsche Bank to settle, on April 6, 2020, Applicant introduced the Disputed Document into the record of the German Action. A true and complete copy of the Disputed Document as presented to the German Court is attached hereto as **Exhibit 1**.

10. The Disputed Document, as presented by Applicant, was a paper printout; it was not a .pst email file or any other electronic file.

11. In response, to the best of my knowledge, Deutsche Bank commenced a thorough search for Mr. Biner's emails (the "Investigation") in all of Deutsche Bank's potentially relevant electronic email archives worldwide (collectively, the "Email Archives").

12. I understand and believe that the Investigation was overseen by Deutsche Bank's Global Head of eDiscovery Services, Margaret Dolson, but the actual searching of the Email Archives was performed by eDiscovery personnel in Europe.

13. On July 13, 2020, Deutsche Bank submitted in the German Action a detailed Witness Statement from Ms. Dolson on the process and the results of the Investigation. I am informed that Applicant has submitted a copy of the Witness Statement with an English translation to this Court.

14. In the Investigation, DB confirmed that (i) Mr. Biner's emails in 2008 were stored in the Email Archives (in the UK), and (ii) the Disputed Document was not in the Email Archives.

15. In the Investigation, Deutsche Bank also discovered in the Email Archives several identical copies of a certain email (.pst file) (the "DB Document") that in large part resembles the Disputed Document in the Email Archives.

16. The DB Document, located in electronic form (.pst file), is from Mr. Biner (in Zurich) to his colleague Richard Carson (in London) dated March 28, 2008. A true and complete copy of the DB Document (converted to .pdf) is annexed hereto as **Exhibit 2**.

17. On October 29 and December 3, 2020, Applicant filed responses in the German Action, asserting that the DB Document is a forgery and the Disputed Document is authentic. Applicant submitted a report and a supplement from a detective agency based in Gav-Yavne, Israel called "International Intelligence Agency" that provided a "Picture[]" from the "Dark Web" that purportedly confirms the authenticity of the Disputed Document (the "Dark Web Document"). A

true and complete copy of the supplement mentioned, which attaches the "Picture[]" mentioned, is annexed hereto as **Exhibit 3**.

18. Applicant has never disclosed where she obtained the Disputed Document. Applicant has not explained how it is that her experts could **not** find the Disputed Document there, but **did** find the Dark Web Document, with numerous discrepancies against the Disputed Document. Applicant has not explained why her experts, deeply familiar with the Dark Web, could only share the Dark Web Document in the form of a blurry "Original Picture[]" of a piece of paper apparently photographed at an angle, and not in an electronic format.

19. On February 26, 2021, Deutsche Bank filed in the German Action a report from Deloitte GmbH ("Deloitte"). DB had engaged Deloitte as a consultant, and at Deloitte's suggestion DB expanded the scope of the Investigation. A true and complete copy of Deloitte's Report (in German) is annexed hereto as **Exhibit 4**.

20. Deloitte confirmed the results of the Investigation. Deloitte concluded that there is no reason to question the authenticity of the several copies of the DB Document in the Email Archives. Ex. 4, at 8. Deloitte also concluded, essentially, that: if the Disputed Document were authentic, it would be in Deutsche Bank's electronic archives; the Disputed Document is not in Deutsche Bank's electronic archives; ergo, the Disputed Document is not authentic. Ex. 4, at 7.

21. The German Court is aware of, and has the authority to decide, the dispute over the Disputed Document, although no hearing has been scheduled at this time.

22. It is an exaggeration to state that "[n]o such procedures exist" for "providing discovery" and "there is no discovery" in the German Action. First, according to Section 142 of the German Code of Civil Procedure, the German Court may, in the exercise of its discretion, direct a party or a nonparty to produce records or documents, as well as any other materials, that

are in its possession and to which one of the parties has made reference. With limited exceptions, a nonparty subject to a Section 142 order may not refuse to produce the document requested by the court and may (subject to its right to appeal) be ordered to produce it. Second, according to Sections 422 and 424 of the German Code of Civil Procedure, litigants may file a petition with the court requesting that the court order production of a document in the possession of the opponent if the petitioner already has a right (for example, under a contract) to receive that document.

23. Most of the subpoenaed documents have also been requested in the German Action. A summary of pending requests for documents in the German Action, prepared by my firm under my supervision, is annexed hereto as **Exhibit 5**.

24. Deutsche Bank has already produced some of the subpoenaed documents that relate to Mr. Biner's emails and phone calls with Mr. Hranov, and Applicant's requests to the German Court are pending for further documents concerning such communications and DB's trading in OC Oerlikon stock and warrants.

25. Deutsche Bank is subject to the general personal jurisdiction of the German Court.

26. I am informed by Deutsche Bank that all of the subpoenaed documents are accessible to DB in Germany, in each case subject to applicable local laws and regulations.

27. The German Court may grant Applicant's document requests or may deny them at some point in the German Action.

28. To my knowledge, Applicant has not informed the German Court about the Application.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Frankfurt am Main, Germany on the 29th day of October, 2021.

*[signature]*

Dr. Christian Schmitt