UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
               :
IN THE MATTER OF THE APPLICATION  :
OF ISABELLA HRANOV FOR AN ORDER  :
TO TAKE DISCOVERY PURSUANT TO 28  :   Misc. Case No. 21-MC-751
U.S.C. §1782  :
               :
               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DECLARATION OF KERN KONRAD IN OPPOSITION TO MOTION TO QUASH

DR. KONRAD KERN declares as follows under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.    I am a member of the law firm Sonntag & Partner Partnerschaftsgesellschaft mbB in Augsburg, Germany. I represent Isabella Hranov in a lawsuit against Deutsche Bank ("DB") and Simon Biner now pending in the Frankfurt am Main Regional Court (the "German Court").[1] I make this declaration based upon my personal knowledge and familiarity with the proceedings, and in opposition to DB's motion to quash the subpoena that this Court permitted Hranov to serve upon DB.

2.    DB's papers make several highly misleading statements about German law and about the proceedings in the underlying case in Germany. **First**, as I said in my declaration in support of Hranov's application under § 1782, there really is no discovery in Germany. There is only a very small, narrow and limited set of circumstances in which a court may direct a party to turn over a specific item to the other side – and such orders are entirely discretionary with the Court. I explain these in more detail below. This is not "discovery" in any sense similar to what is done in common

---

[1] Undefined, capitalized terms herein shall have the same meaning as set forth in the accompanying memorandum of law.

law countries.  I understand that various American courts have made note of unavailability of real discovery in Germany.  *See, e.g., Heraeus-Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) ("Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence"); *In re Ex Parte Application of Porsche Automobil Holding SE,* no. 15-mc-417 (LAK), 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) ("there is little question that [a German court] cannot and, in any case, would not order the type (and scope) of evidentiary production sought by Porsche in this Court;" "Porsche would have to 'specify with considerable precision the particular documents [it] want[s]' in order to get document production in Germany") (citation omitted).

3. **Second**, as even DB does not contest, the German court has no power to direct production of documents kept outside of Germany.  So, given that DB's papers concede that most of the documents Hranov is seeking in this § 1782 Application are kept not in Germany, but rather in Switzerland, the UK and the US (*see* Dolson Dec. ¶¶ 4, 24), there is obviously no merit to DB's contention that the § 1782 Application seeks documents that have already been requested in the German case.  No such request could possibly have been made in the German litigation.

4. **Third**, a German court may direct a person to turn over a document only where a party either (a) placed the item into issue by referring to it in court proceedings; or (b) is otherwise under a legal obligation to turn the item over upon request.  This can happen pursuant to three sets of provisions of the German Civil Procedure Code ("ZPO").

- Under § 142, the court may direct a party to produce a specifically identified document to which it has referred during court proceedings.  The requesting party must identify the specific document in sufficient detail that it can be readily identified.  This is the least restrictive of the statutory provisions.

2

- Under § 421 *et seq.*, a party may demand that the other party produce a document if one of the following two conditions are met:

  ▶ Under § 422, if the party seeking the evidence has a legal right to obtain the documents from the adversary even outside litigation; or

  ▶ Under § 423, if the adversary has itself indicated it would offer or was offering the document into evidence.

  If a request is made under § 421, the petition must contain the following, set forth to the court's satisfaction as required by § 424:

  "1. Designate the record or document;

  2. Designate the facts the record or document is intended to prove;

  3. Designate, as completely as possible, the contents of the record or document;

  4. Cite the circumstances based on which it is being alleged that the opponent has possession of the record or document;

  5. Designate the grounds based on which the obligation results to produce the record or document. These grounds must be demonstrated to the satisfaction of the court.[2]"

- Finally, under § 371 the court may permit a visual inspection of a designated object; if the object is not in the possession of the requesting party, the requirements of §§ 421 *et seq* apply to the § 371 request.

These provisions are not "discovery" in anything resembling the normal common law sense of learning information; to the contrary, these provisions all presume that the requesting party has sufficient knowledge of the requested item that he can identify it specifically -- and even then, he may request it only if the other side has somehow placed it in issue or otherwise is legally obligated to

---

[2] The listed items in the text from § 424 are quoted directly from the English language version of the ZPO website of the German Bundesamt fur Justiz (Federal Justice Office), found at https://www.gesetze-im-internet.de/englisch_zpo/englisch_zpo.html.

3

provide access. (A link to the German Justice Ministry's English translation of the ZPO appears in footnote 2.)

5. I find it revealing that DB has not explained to the Court the precise nature of the requests Hranov has made to the German court. It should be borne in mind that the German Court cannot order production of items kept outside Germany even if the items otherwise could be requested under the terms of §§ 142, 421 *et seq.* or 371. By the time Hranov made this application under § 1782, DB had already submitted to the Dolson Decl. to the German Court. Ms. Dolson's declaration (Docket No. 2-3) says clearly that the records of Biner's communications that her office retrieved – which comprise the bulk of what the § 1782 request seeks – are not kept in Germany. So this idea that Hranov is seeking under § 1782 what it already sought in Germany is, for the most part, plainly fallacious. (Note that Dr. Schmitt's declaration (Docket No. 12) carefully says only that the documents sought here are "accessible to DB in Germany," Schmitt Dec. ¶ 26), not that they are found in Germany).

6. Hranov's requests in Germany did not ask for emails or text messages or instant messages or anything of the like. That is the overwhelming bulk of what Hranov is seeking in this § 1782 application. As the Court will note from simply scanning the document requests, they focus mainly on "communications" between Biner and others or about Biner. *See* accompanying Declaration of Scott Watnik dated November 24, 2021, at Ex. A (Subpoena).

7. The requests in Germany are much different. They focus on specifically identified items, none of which is an email. This is clear from the face of the chart Dr. Schmitt has offered to the Court (Schmitt Decl., Ex. 5). The requests can be summarized briefly. Two seek extracts of DB's accounting records concerning DB's own Oerlikon trades for two periods (writ of October 31, 2016 and writs of August 31, 2017 p. 46 and April 23 2018 p. 24). It is not clear that these records are kept in Germany rather than in Switzerland. This § 1782 application makes no such request,

4

though I suppose it is possible that among the responsive documents to the § 1782 request, these might show up.  In fact, Dr. Schmitt has apparently now testified that that is so (as DB's attorney, he would know; we would not have that knowledge).  If the Court finds that to be a matter of concern, Hranov is amenable to excluding these particular documents from the § 1782 request.

8. The writ of August 31, 2017 at pages 20, 21 and writ of April 23, 2018 at p. 31 seek recordings and transcripts of telephone conversations between Biner and Rumen Hranov, as listed in "an overview prepared by [Hranov]" that lists the conversations.  It is not clear that these items are kept in Germany and thus subject to production in the German Court.  Be that as it may, the § 1782 requests do not ask for recording and transcripts, though I note that the requests' definition of "document" is broad and likely would embrace them.  Again: to the extent this may be of concern to the Court, Hranov is amenable to excluding the telephone recordings and transcripts from the § 1782 request.

9. The last request in Germany concerns primarily the Disputed Email.  It is not included in the § 1782 request.  DB submitted an expert report from Deloitte purporting to authenticate DB's version of the Disputed Email. (Schmitt Decl., Ex. 4).  That report describes Deloitte's work, which included inspection of DB's backup tapes containing the Disputed Email, based upon which Deloitte reported that the email was genuine and any discrepancies are technically explainable.  Hranov thereupon requested a "visual inspection" of the backup tapes under § 371 of the German Code of Civil Procedure to be able to see, and check, what Deloitte says it saw.  Section 371 provides: "(1) Evidence taken by visual inspection is offered by designating the object to be inspected visually and by citing the facts regarding which evidence is to be provided.  If an electronic document is to serve as evidence, it shall be so offered as evidence by producing or transmitting the file."  https://www.gesetze-im-internet.de/englisch_zpo/englisch_zpo.html (German Federal Office of Justice's English translation of German Code of Civil Procedure).  The § 1782 subpoena

5

as served does not ask for a visual inspection of backup tapes. It asks for production of emails and other communications and documents.[3]

10.     It is clear to me that DB is intent on trying to prevail in Germany by concealing facts and preventing the truth from coming out. This way it can "cherry pick" the evidence it wants to present without also making available the damning evidence. As I understand it, § 1782 has as one of its objectives setting an example for others of the United States's disclosure rules. Those rules clearly facilitate a high quality of justice based on full disclosure of the facts. That is all we are seeking by this application.

Dated: Augsburg, Germany
       November 24, 2021

SONNTAG & PARTNER
Partnerschaftsgesellschaft mbB
Wirtschaftsprüfer, Steuerberater, Rechtsanwälte
Schießstraße 3, 86159 Augsburg
Tel 0821/57058-0 Fax 0821/57058-153

Konrad Kern

---

[3]  The request Hranov made that the Court declined to permit -- for an inspection of DB's system -- was a broader and different one, not focused on specific backup tapes.

6